# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: ) <br> **WOODALE PROPERTIES, LTD.,** ) <br>     Appellant, ) <br> ) <br> v. ) <br> ) <br> **AMERICAN CHARTERED BANK,** ) <br> ) <br>     Appellee. ) | Case No. 16 C 7026 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On June 1, 2016, the bankruptcy court granted American Chartered Bank's motion to dismiss the Chapter 11 bankruptcy case of Woodale Properties, Ltd. pursuant to 11 U.S.C. § 1112. On June 30, 2016, after a hearing, the court denied Woodale's motion to vacate the order of dismissal. Woodale has appealed, contending that the bankruptcy court abused its discretion. For the reasons set forth below, the Court affirms the bankruptcy court's order.

### Background

Woodale was a single asset real estate debtor. This means that its bankruptcy estate consisted of real estate constituting a single property or project that generated substantially all of Woodale's income and on which it conducted no substantial business other than operating the real property. 11 U.S.C. § 101(51B). Woodale's single asset was a parcel of real estate located at 861-69 Central Avenue, Wood Dale, Illinois, and its sole source of income was the rental income from its tenants. Woodale operated

under the direction of James Gentile, its sole owner and officer.

The property was encumbered by a mortgage given by Woodale to American Chartered Bank to secure a $2.1 million promissory note. The note was set to mature on June 30, 2011, at which point Woodale would have an option to renew the loan for a three-year period following the loan's maturity date. On October 29, 2012, Woodale filed suit in state court seeking specific performance from American Chartered Bank on this option. On October 3, 2013, the state court held that Woodale was entitled to specific performance, and it extended the loan's maturity date to December 28, 2014. On November 21, 2014, the circuit court clarified its decision, ruling that Woodale was required to start making payments on the note to the bank beginning June 16, 2014, after which interest would start accruing on the principal amount due. In that same order, the circuit court directed Woodale to pay the bank back taxes in the amount of $125,970.76 by December 1, 2014.

On April 13, 2015, American Chartered Bank filed a mortgage foreclosure action against Woodale in state court. On October 19, 2015, the state court granted the bank's motion to appoint a receiver for the non-residential portion of the property. The court ruled that the "receiver is empowered with all the duties, responsibilities and powers enumerated in the Illinois Mortgage Foreclosure Law," including being "authorized to collect all rents relating to the property." R. 101.[1] The order also directed all tenants of the property to "pay rent to the receiver" from that point forward. *Id.*

On October 26, 2015, Woodale filed a voluntary petition for relief under Chapter

---

[1] The "R." cites correspond to the "page ID" number contained in the CM/ECF header on the record on appeal, which is found under district court docket entry 6.

11 of the Bankruptcy Code. Section 543(b) of the Code requires a custodian or receiver of a property belonging to a debtor to turn the property over to the bankruptcy proceedings' trustee. 11 U.S.C. § 543(b). American Chartered Bank moved to excuse compliance with this requirement, asking to keep the receiver appointed by the state court in place during Woodale's bankruptcy proceedings under section 543(d)(1) of the Code, which authorizes a bankruptcy court to excuse compliance "if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property." 11 U.S.C. § 543(d)(1). The bank argued that Woodale's failure to 1) insure the property, 2) comply with the order appointing a receiver, 3) comply with the court order to reimburse the bank for back taxes, and 4) file state or federal income tax returns since 2009 rendered Woodale unsuitable to manage the property. On November 10, 2015, the bankruptcy court granted the bank's motion to excuse compliance, finding that "[i]t is in the best interest of the creditors that the receiver continue to exercise possession, custody and control over the property." R. 172.

On January 22, 2016, Woodale filed a plan for reorganization in which it proposed to pay American Chartered Bank monthly interest payments of 3.5% on the note, with the property to be sold within five years (later amended to three) after confirmation of the plan. On March 2, 2016, the bank filed an objection, arguing that the plan was impracticable due to Woodale's mismanagement of the property. As one example, the bank noted that "[n]o rent has been paid to the Receiver by Mr. Gentile or the entity operating in Unit 178" and that "[r]ent is due and owing to the Receiver for November, 2015 through March, 2016 in the approximate amount of $15,000.00." R.

3

270.

At a hearing held on March 22, 2016, the receiver reported to the bankruptcy court that Woodale had been interfering with his ability to manage the DuPont property. Among other things, the receiver reported that Woodale was preventing him from renting out Unit 178, saying "[Gentile is] not paying rent[,] has stuff in an area and refuses to move it." Mar. 22, 2016 Tr. at 6:12-15. The court advised Woodale's counsel that the bankruptcy code provides "extraordinary relief [to a debtor], but it requires cooperation" and warned that "[i]f I don't get cooperation from the debtor, I'll just dismiss the case and bar the debtor from refiling. I just want you to know I don't believe in – I'm not going to chase somebody around." *Id.* at 7:2-8. On the issue of nonpayment of rent, Woodale contended that *it* was the occupant of Unit 178, stating that Gentile used the unit as his personal office to manage the property; it argued that "[t]he owner doesn't have to pay rent on his property." *Id.* at 10:21-22. Because it was getting conflicting information, the court directed the receiver to visit the property to determine who was occupying Unit 178. *Id.* at 13:23-14:4.

On March 31, 2016, American Chartered Bank filed a motion seeking dismissal of the bankruptcy proceeding pursuant to 11 U.S.C. § 1112. In the motion, the bank asserted that dismissal was appropriate due to Woodale's continued and willful failure to comply with the order appointing a receiver.

On April 7, 2016, a hearing was held at which the parties questioned the receiver regarding his visit of Unit 178. The receiver testified that, based on his visit, he believed that Gentile was the occupant of Unit 178, not Woodale. He indicated that there were no signs that Woodale was operating its business out of Unit 178. The receiver

4

explained that Woodale had only one employee, Gentile, so the 5,000-square-foot unit "would have been a misuse of space," because "if [Woodale, through Gentile,] was operating the property, he [could] do it in just a little small office." Apr. 7, 2016 Tr. at 18:6-10. The receiver also noted the type of equipment found in the unit, and determined that "there was [ ] nothing there that [Woodale] could use for [maintaining] the properties." *Id.* at 17:22-24. The receiver explained that he found several pieces of equipment in the unit that were incompatible with the contention that the unit was being used for management of the property, including a van, a snowmobile, multiple scissor lifts, a woodshop, and several computers. *See id.* at 16:11-19; May 18, 2016 Tr. at 10:3-11:14 (discussing the snowmobile found in the unit). The receiver advised the bankruptcy court that in his view, either Gentile or another business run by Gentile was occupying Unit 178.

At the same hearing, the parties questioned the receiver on Woodale's claimed interference with his ability to lease other units on the property. The receiver testified that he found a tenant for Unit 176 that intended to use the space for "dead space storage," which required Woodale, through Gentile, to remove a racking system from the unit. Mar. 22, 2016 at 10:5-12; Apr. 7, 2016 Tr. at 11:14-13:4. The receiver testified that Gentile refused to remove the racking until the court ordered him to do so. *Id.* The receiver also testified that Gentile had tried to lease one of the units on the property to a former tenant without consulting the receiver. R. 314; Apr. 7, 2016 Tr. at 15:17-24. The receiver explained, "I think the fact that [Gentile] put himself out as the manager and quoting rent, and at a higher rent than even Mr. Gentile thought was reasonable for the property, I think that's the issue." *Id.* at 25:8-12.

5

On May 18, 2016, the court held a status hearing to discuss the bank's objection to the debtor's proposed plan, as well as the bank's motion to dismiss the bankruptcy case. The bank's counsel argued that dismissal was warranted because Woodale's non-compliance with the receiver, including not paying rent on Unit 178, indicated that Woodale was "playing fast and loose" with the court. May 18, 2016 Tr. at 8:22-25. The court ruled that the occupant of Unit 178, Woodale or otherwise, had to pay rent or vacate the premises. Woodale's counsel argued that Woodale should not be required to pay rent to the receiver because it still owned the property and had not lost ownership by filing bankruptcy or otherwise. *Id.* at 16:3-8. Counsel noted that the receiver was managing the property on behalf of and in the interest of Woodale and that the goal of the bankruptcy proceedings was to return possession of the property to Woodale. Counsel argued that requiring Woodale to, in effect, pay itself would be counterproductive to the bankruptcy proceedings. And as a practical matter, counsel said, there was no way for Woodale to pay rent because it had no source of income. Counsel suggested that if Woodale were required to pay rent on Unit 178, then the receiver should give the rents collected from the other tenants on the property to Woodale and that this, in turn, would enable Woodale to pay the rent.

The court rejected Woodale's suggestion and stated that it was "not going to make [the receiver] pay the rent" and that instead, "[w]hoever is in that space can pay or leave." *Id.* at 20:4-8. The court explained that (1) it was disputed whether Woodale actually occupied Unit 178, so Woodale's arguments about ownership were inapplicable, and (2) in the event Woodale was the occupant of Unit 178, the receiver had determined that it was in the company's interest to rent the unit to an entity that

6

could afford to pay for it. *Id.* at 12:20-25, 16:9-19, 19:13-18. The court told Woodale that "if you can't afford it, then don't occupy the space." *Id.* at 15:5-6. Following the hearing, the bankruptcy court ordered: "Entity occupying Unit 178 at the property ordered to pay Receiver Dan Hyman the sum of $6,000.00 via cashiers or certified check by next court date for April & May 2016 rent." R. 326. The court also postponed ruling on American Chartered Bank's motion to dismiss and set a status hearing for June 1, 2016 to ascertain compliance with the order to pay rent.

On June 1, 2016, Gentile, the occupant of Unit 178, issued a check for the April and May rent ordered by the court, but he made the check payable to Woodale instead of the receiver. At a hearing held on that date, Woodale's counsel said that the check had been made out to Woodale because the "rent belongs to the mortgagor." June 1, 2016 Tr. at 2:10-21. Counsel said that a new check would be issued, stating: "I can have it certainly done by 1:00 o'clock. I'll deliver it to [the receiver's] office. I'll have my runner go over and take it to him. It's not a problem." *Id.* at 5:1-4. The court permitted the error to be cured, directing that the check was to be made payable to the receiver and was to include rent due for the month of June. R. 327.

Contrary to counsel's representations, the rent did not get paid on June 1. On June 8, 2016, American Chartered Bank filed a second motion to dismiss. It again referenced Woodale's ongoing noncompliance with the receiver and also argued that dismissal was warranted due to Woodale's failure to comply with the court's June 1, 2016 order. R. 328. Several days later, on June 13, Gentile paid rent to the receiver—thirteen days after the deadline the court had set back on May 18.

On June 15, 2016, the bankruptcy court held a hearing on the bank's motion to

dismiss. The bank's attorney argued that Woodale was not simply late in paying rent but had also failed to file any operating reports since the start of its bankruptcy case. Woodale argued that it could not file the reports because it was not in possession of the property. The court rejected this argument, stating, "you aren't telling me you've been shut out of information . . . . to proceed with the duty to file monthly operating reports." June 15, 2016 Tr. at 9:9-13. Woodale offered to correct its error by filing all the reports at once, but the court found this insufficient, saying, "a six-month old monthly operating report is an insult to the bankruptcy system. The entire – the trustee, the case trustees, the receiver, the creditors have a right to know what's going on [] a monthly basis." *Id.* at 10:16-20. The judge likewise rejected Woodale's excuse for the late payment of the rent on Unit 178. When the judge asked Woodale to explain why the rent was late, Woodale's attorney said, "[b]ecause he didn't have the money[,] because Mr. Gentile, not Woodale Properties" had to pay rent. *Id.* at 12:17-21. The judge responded, "You can't fill up a commercial property with your friends and personal issues and possessions and businesses and excuse yourself from paying rent . . . . when there's a lien on the property." *Id.* at 13:5-11. The court granted the motion to dismiss Woodale's bankruptcy case, stating at the conclusion of the hearing that "[t]here's just too many – there's just too many issues, sir. The case is dismissed." *Id.* at 14:1-3.

On June 20, 2016, Woodale filed a motion to vacate the dismissal order. R. 355-58. A week later, on June 27, Woodale submitted monthly operating reports for April 2016 through June 2016. At the hearing on the motion to vacate, held on June 30, 2016, Woodale argued that the court had improperly dismissed the case based on the actions of a third party, Gentile. June 30, 2016 Tr. at 2:11-3:7. The court stated that

"[f]rom what I recall, the occupancy was not related to the debtor's business. It wasn't generating any income. There was nothing there that contributed to the debtor's business." June 30, 2016 Tr. at 5:14-17. At the conclusion of the hearing, the court denied Woodale's motion, stating that "every time there's a problem, you file . . . five monthly operating reports . . . at the end of June. Everybody has a right to have a up-to-date assessment and information as the case proceeds. The motion to vacate is denied." *Id.* at 7:11-23.

On July 6, 2016, Woodale filed this appeal.

## Discussion

The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The bankruptcy court dismissed the case under 11 U.S.C. § 1112(b), which gives the court "broad discretion . . . to dismiss a Chapter 11 case for cause." *Matter of Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994). "[W]here the bankruptcy code commits a decision to the discretion of the bankruptcy court, [the Court] review[s] that decision only for an abuse of discretion." *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009); *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002). A bankruptcy court abuses its discretion under section 1112 "when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 652 (7th Cir. 2010) (internal quotation marks omitted). This Court may affirm the bankruptcy court's ruling "on any basis that is supported by the record, so long as it has been fairly presented." *Id.*

Woodale contends that the bankruptcy court improperly dismissed its case based on the actions of a third party. It appears to contend that the court based the dismissal exclusively on noncompliance with the June 1 order directing the "entity" occupying Unit 178 to pay rent. Woodale further notes that the court had previously determined that Gentile, not Woodale, occupied the unit; accordingly, it concludes, it was the responsibility of Gentile, not Woodale, to pay the rent. Alternatively, Woodale contends, if the bankruptcy court's view was that Woodale itself occupied Unit 178, then it was the responsibility of the receiver to pay the rent.

Woodale's argument proceeds from an incorrect premise, specifically that the nonpayment issue was the exclusive basis for the bankruptcy court's dismissal order. That is not the case. This is clear from the text and context of the judge's oral ruling on June 15, 2016, at the end of which the judge stated that "[t]here's just too many – there's just too many issues, sir. The case is dismissed." June 15, 2016 Tr. at 14:1-3. The receiver had reported several instances of Woodale's noncooperation with the court's order maintaining the receiver's control over the property. In March and April 2016, Woodale initially refused to remove a racking system in a unit that the receiver intended to lease to a tenant that planned to use the space for storage. Mar. 22, 2016 Tr. at 10:5-12; Apr. 7, 2016 Tr. at 11:14-13:4. Around that time, Woodale also tried to lease a unit to a former tenant without informing the receiver. R. 314; Apr. 7, 2016 Tr. at 15:17-24. Additionally, Woodale argued time and time again, in hearings spanning from March 22, 2016 through June 20, 2016, that it was the tenant of Unit 178 despite evidence indicating otherwise. On May 18, 2016, the court finally determined, contrary

to Woodale's contention, that it was *not* the occupant of the unit. The court made this determination not because Woodale self-reported this but as a result of the court-ordered inspection by the receiver. Mar. 22, 2016 Tr. at 13:2-14:15. The receiver discovered the unit contained several pieces of equipment that were incompatible with the contention that Woodale was using the unit to manage the property, including a van, a snowmobile, and several computers. Apr. 7, 2016 Tr. at 16:11-19:14; May 18, 2016 Tr. at 10:3-11:14.

More importantly, Woodale failed to file a single operating report following the initial of bankruptcy proceedings on October 26, 2015. Indeed, no such reports were filed prior to the hearing on the bank's motion to dismiss. The record of that hearing reflects that the bankruptcy court relied on this in dismissing Woodale's bankruptcy case. When Woodale's counsel, at the hearing, offered to bring the reports up to date, the court made it clear that would not absolve Woodale of its concerted noncompliance prior to that date, stating "a six-month old monthly operating report is an insult to the bankruptcy system." June 15, 2016 Tr. at 10:16-20. And contrary to Woodale's contention that the court based the dismissal on the issue of nonpayment of rent, the record reflects that at the conclusion of the hearing, the court made it clear that what it considered was Woodale's pattern of noncompliance. As noted earlier, the court stated that "[t]here's just too many – there's just too many issues, sir. The case is dismissed." *Id.* at 14:1-3.

A week after the court entered the dismissal order, Woodale filed several monthly operating reports. But the bankruptcy judge had already stated, at the June 15 hearing, that this would not cure Woodale's noncompliance. The Court also notes that the

11

bankruptcy judge's comments at the June 30, 2016 hearing on Woodale's motion to vacate make it clear that her ruling was premised on a pattern of noncompliance and non-cooperation, and not simply the rent issue. The judge stated, "every time there's a problem, you file . . . . five monthly operating reports . . . . at the end of June. Everybody has a right to have a up-to-date assessment and information as the case proceeds. The motion to vacate is denied." June 30, 2016 Tr. at 7:11-22.

As indicated earlier, section 1112(b) permits a bankruptcy court to dismiss a case for cause. The statute provides several examples of "cause," including a debtor's "gross mismanagement of the estate," "failure to comply with an order of the court," "unexcused failure to satisfy timely any filing or reporting requirement [under this chapter]," and "failure timely to provide information . . . reasonably requested" by the bankruptcy administrator. 11 U.S.C. § 1112(b)(4)(B), (E), (F), (H). Any one of these grounds—or, perhaps, several of them—applies here. The Court concludes that the bankruptcy court acted well within its discretion under the statute when it dismissed Woodale's Chapter 11 bankruptcy case.

## Conclusion

For the reasons stated above, the Court affirms the decision of the United States Bankruptcy Court dismissing Woodale's Chapter 11 bankruptcy case pursuant to 11 U.S.C. § 1112(b). The Clerk is directed to enter judgment affirming the decision of the Bankruptcy Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 24, 2017